This afternoon is case number 4110844, Derry v. Stuller. For the appellant, we have William Horrigan and for the affiliate, Gary Klein. Please proceed. This case comes before your honors on a grant of a summary judgment by the trial court below. Before I talk about the law, I'd like to very briefly talk about the facts. I know you've read the case and you're familiar with it, but this action took place at a steak and shake here in town. And the fiscal layout basically is that there's a sidewalk that runs along the perimeter of the front of the steak and shake where the front door is. That sidewalk is continuous and unbroken. Along the edge of that sidewalk border in the parking lot is a curb, which is also continuous and unbroken. Excuse me for a minute, I'll be right back. He'll be able to hear you back there, he's probably just getting a file or a case or something. Then adjacent and at least a step down from that curb is a parking lot. All of these structures are made of the same material, they're made of concrete. Attached to that curb is a wheelchair ramp. And this is not the type of wheelchair ramp that we're familiar with, which gives some indication. It's there where there's actually a curb cut that goes down, the sidewalk goes down, and then you walk out into a parking lot. This is a wheelchair ramp, or a handicap ramp as you will, that is made out of concrete that is poured in a curve and gently slopes down to the parking lot itself. The problems with this wheelchair ramp from the perspective of the plaintiff is that it's the same color as the sidewalk, as the curb, and as the parking lot. And because it's curved, even at nighttime if there are some lights it's not going to cast a shadow of any sort because of the nature of the curvature. My client walked into the Steak and Shake and when she left it was dark. One of the problems with this case, and I think the reason why we're here, is because my client in her deposition testimony was kind of all over the ballpark in terms of what happened. You know, I went back to get the record, and the photographs in the record are just terrible. They're black and white copies, and you can't tell anything. I'm afraid that's the way the photographs were in the originals, too, that I had. I had some that were barely colored. Then you had some colored photographs, but they aren't of the scene, are they? They're different. Well, if I may, can I approach? Sure. The one with the blue is not of the scene. And that's not of the scene. None of these are of the scene. That's right. And what are those? Well, those are exemplars to show what could have been done with a similar type of a rack. It's an exhibit. Mr. Klein, you've seen these things before. Okay. I apologize. They were an exhibit in the trial court, were they not? Yes. That's fine. It was a motion to fire. Okay. Excuse me. Hold on a second. You file a motion to strike these in this court? No, I'm sorry. Okay. All right. But, okay, just give it. What I'm holding in my hand, these were not of the scene? No, they were photographs that were produced for the purpose of using at the time of trial to show what could have been done in terms of marking the trace. But in any event, yes, I apologize for the quality of these photographs. Unfortunately, I got into this case quite late. You said that your client came out after dark, rather, a statement shake after dark, correct? Yes. Well, when she went in, was it dark? I don't believe it was, Your Honor. Okay. Well, does that matter? Not really. Why not? If something's open and obvious, should she not have seen that when she went in? Well, if it's open and obvious, your perspective of how you're seeing it from the direction you're walking and everything else changes. So you can't say that something's open and obvious when you're walking upon it. It's the same as when you're stepping down at nighttime and the lighting's different. And I apologize for the state of the record, but unfortunately I wasn't involved in this case when these depositions were taken. But we come down to an issue as to whether this is open and obvious as a matter of law. And my client, and I will admit she's like all over the place on her death, but she does come down to the point where she says, yeah, this is where I fell, this is what I stepped on, and while there was some lighting out there, it wasn't bright enough to see by. And by that I interpret that she means you could see things, but you couldn't see well enough to differentiate the differences in this pavement. I thought she said she could see where she was stepping. Well, she did say she could see where she was stepping, but that doesn't mean she could see what she was stepping on. I mean, you can see that you're stepping down. What does it mean? What? What does it mean that I can see where I'm stepping if it doesn't mean you can see where you're stepping on? Because she can see that she's stepping down at the parking lot. But that doesn't mean that she could see that there was differentiation in the grade at that point, which is very clear from her testimony because she says that she stepped down and her foot got caught on something. It twisted her foot and she fell down. So if she could actually have seen the differentiation between the parking lot and the ramp, she wouldn't have stepped that way. So we think we see what we're stepping on. Did she testify to that? What? Did she testify to that? If she could have seen it, she would have. I think if you fairly read the record, you can tell that she didn't see it, but no, she didn't testify to that. But I think that when we look at this, and this is a de novo review of the trial court, there is sufficient factual basis to go to trial on this issue. The issue of whether it's open and obvious is only a question of law if the question of visibility isn't raised. And she raises the question of visibility. She says the lighting wasn't, in her words, it wasn't enough to see by. So the fact that she saw where she was stepping, if she had actually seen where she was stepping, she would have known what she was stepping on. As it is, she's pretty vague as to what she stepped on. She just knows that wherever she put her foot, something caught her foot and it caused her to fall. I admit that the depositions are not as strong as I would like. Sometimes when defendants take depositions, they manage to ask questions due to the skill that they have as attorneys representing defendants that place the issues somewhat in a fuzzy manner that makes it very difficult. Did she file an affidavit explaining all this? The problem, Your Honor, is there's a whole series of cases, starting with, I can't remember which one it is, it says that due to the temptation to commit perjury, you're not going to be allowed to file an affidavit to contradict or correct or modify testimony that you've given under oath. And I don't have those cases in hand, but being a plaintiff's attorney and having wanted to do it a number of times, I've run into the situation where once you have a deposition where someone says something, it's very difficult to then correct and supplement the affidavit. So you don't have anything? The deposition wasn't very good? You wouldn't file an affidavit because that would have contradicted the deposition? Well, as a matter of law, I don't believe I can file an affidavit. But I believe, Your Honors, if you read what she has said, it's very clear that this condition was not open and obvious or she wouldn't have stepped on it because the lighting was such that it wasn't able to be discerned and there were no markings. And I agree with counsel that you don't have to mark something, but when you have something like this that isn't marked at all and it's all the same color, then you can't go around saying, well, it's open and obvious because it's not. How is this different than the Kimbrough case? Which one? The Kimbrough case where the plaintiff in her deposition said she didn't know why she fell and there were no other known eyewitnesses, summary judgment granted. Well, because she does know why she fell. Because she fell on something that was uneven. She fell on that location. The only reason why she could have fallen is because she stepped on that ramp which she didn't see. The Kimbrough case, she says, I don't know why I fell at all. Maybe she was looking at a bird or something. Maybe she has bad eyesight. Maybe she is not a good walker. Well, and you know, Your Honors, if you have people who have bad eyesight, people who are looking ahead of where they're going instead of down at their feet, which is what most of us do, then you need to do something about those things that are right at our feet so that you can actually see them. And that's what this case is about. So if anybody falls outside of a restaurant, it's the restaurant's fault. Not at all. This is not a case where my client tied her shoelaces together and started walking and fell. It's not a case where she stubbed her toe and fell because she doesn't know how to walk. It isn't a case where she's on a walker or on crutches and she has stability problems. It's a case where she doesn't know why she fell. No, it's a case where she knows why she fell because she stepped on something uneven that caused her foot to turn, and the only thing that was there. Again, did she say that? She says, okay, is that what you stepped on? Yes, yes, it is. And that's the record on pages 72, lines 14 and 24. Is that what you stepped on? Yes, yes, it is. And that caused your ankle to twist and you had to fall on the ground and injure your elbow. Right. So she knows where she fell. It's at the ramp. It caused her ankle to twist. It's what she stepped on. So she has enough here to establish the nexus between that ramp and the lack of visibility and her fall. So this is not the same case as I don't know why I fell or what I fell on. Well, we can argue this, but I think that in this state, when we have sufficient facts to rise to a question of a material fact, we're entitled, my client's entitled to a trial on that fact. And we should not sit here as judges and try to weigh the adequacy of the testimony when there is at least sufficient testimony to avoid a directed finding, and I believe that's what we have in this case. I think we also have sufficient evidence that the lighting was bad. It's not necessary for my client to be able to sit down and take a light meter and determine how many lumens there were or whatever. She says in her testimony that there was not enough light to see by, regardless of what lights there were or weren't. We have established that the lighting, by the testimony of my client, was not enough to see by, and there was a condition which she didn't see, which was obviously hidden by the fact that everything was the same color and it wasn't marked. I believe on that basis that summary judgment should not be granted. Whether we're ultimately going to succeed in a trial is another issue entirely. So as I understand your argument, the question of whether something is open and obvious in this case is a fact, not one of law. That's my position, that the question of whether with regard to open and obvious is a question of fact. When there is sufficient testimony and evidence to indicate that there's reasons why this couldn't be seen. And you need to look at another terrible photograph. But what we have that's undisputed is we have a monochromic condition in dim lighting that is dangerous and can't necessarily be seen in the lighting that was available by this particular client. And I think that on those facts, we have enough that we shouldn't have had a summary judgment granted in this case. We should have had a jury trial. The jury might make all the arguments that you make in the jury room. We may end up getting nothing. But I think that my client, under the law of the state of Illinois, is entitled to proceed. And we should be reversing the decision of the trial judgment. And that's about all I have to say unless you've got some other questions for me. I see none right now, but you will have rebuttal. Thank you. Mr. Klein. At the risk of being accused of oversimplifying this case, I think its essence can be found on a single sentence on page 2 of the plaintiff's reply brief. And I quote, Appellant cannot pick and choose from the plaintiff's deposition to arrive at its desired conclusion. As you have in front of you, it does say appellant. That is the plaintiff. And I agree with that statement. I don't think that's what they meant to put in the brief. I think they meant to put that appellee cannot pick and choose. I don't agree with that statement because when the plaintiff, for two reasons. One, when the plaintiff makes a statement, it's an admission. It's an admission, a statement under oath which she cannot retract. The defendant can pick those admissions and use them to give a summary judgment, which is what happened in this case. Plaintiff cannot admit that she does not know what the lighting conditions were at the time she fell. That she does not know whether the ramp in front of Mike Klein's restaurant was striped or not. And that she does not know what the slope was of the ramp. And then come before the trial court and now this court and say, but the lighting was bad, the slope was bad, although it was described here today as gentle. There is nothing in the record other than argument as to what that slope was. I was there, so I know what was presented. Your honors have looked at this record. Is there anything which says that it's 1 in 10, 2 in 10, 10 in 10? No. There is no evidence whatsoever of slope. The only evidence of what the lighting conditions was comes from the plaintiff and her son. And he doesn't know. He said he didn't know. The plaintiff said she doesn't know. She knows there was lights coming on, there was lights on in the restaurant. She doesn't know if there were lights in the front of the building. She thinks there might be lights in the parking lot, but she's not sure. And she says in one place that it was not light enough to see or she couldn't see. That is not enough. That is her opinion as to what the lighting conditions were. But there is no basis for that opinion because she said she doesn't know what they were. If she said, you know, when I went in, it was light. When I came out, there were no lights on in the parking lot. I looked around and it was completely pitch dark. I couldn't see, and I tripped and fell. Okay? That's not this case. As counsel said in her deposition, she was all over the ballpark. It is the plaintiff's burden to establish facts, not her thoughts, not her impressions, not her beliefs, but facts which give rise to the – or which support the allegations in her complaint. And that's all we have before this court. That's all we have before the trial court is allegations in the complaint and no facts to support them. What we have is a jumble of conflicting, confusing thoughts and impressions. Plaintiff may be, as she testified, a pleaser who will say what she thinks her questioner wants to hear. I would remind the court that the statement that she could see where she was stepping, which now is contradicted by arguments saying, well, that doesn't mean she could see what she was stepping on. Well, I put it to you that the question was asked by her own counsel in the deposition, and the question was clear and the answer was clear. She could see where she was stepping. And she also said that she stepped off the curb and she twisted her ankle and she fell. Nothing about that creates liability on the part of my client unless, as your Honor asked, there is liability for any time anyone falls in front of a restaurant. This is not strict liability. The fact that she told this same thing to the emergency room personnel, she tried to say, well, no, I really didn't say that. I might have said that. If I did say that, it was because I was in a lot of pain and because I was on a lot of drugs. Well, again, it's in the records. She said it. She acknowledged that she might have said it, and it's consistent with what she testified and consistent with her injuries. She stepped off a curb. She misjudged the height, maybe because she's a poor judge at death. But there is nothing in the record on which a claim of negligence could be found. Do you agree, Mr. Horrigan, that in this case the question of whether it was being open and obvious is a fact question? I do not agree. And why not? Because in order for there to be a fact question, the plaintiff must bring forward some facts, which then the defendant disputes. And as I said, the plaintiff has brought forth allegations. The plaintiff has brought forth impressions, beliefs, and thoughts, but no facts. There is nothing in the record which would tell you, tell your honors, what the lighting was in front of Steak and Shake, whether it was as light as it is in this room or as dark as it is under this podium. There's nothing in the record to show what that is, and that's the plaintiff's burden of proof. There is, as I said, nothing in the record to show what the slope was. That's written in concrete, isn't it? What the slope is? The slope is. The slope is still there, I guess. It is, Your Honor. It was the last time I was there, which has been a few months ago now, but that was years afterwards. And it's the plaintiff's burden of proof to show that that slope was the cause of her fall. And if you read the deposition and if you look at those pictures and where she marked things, she is, again, all over, let's say, the parking lot, in this case, as to where she fell and how she fell, and purely speculating after the fact as to what might have caused her to fall. Speculation, guess, conjecture do not create disputes of fact. The law is correct that if there is a dispute of fact as to what the conditions are, then open and obvious is a question of fact. Well, wasn't there a question here of how much lighting, at the time of the accident, there was to illuminate the ramp? Isn't that a question that we don't know the answer to, and therefore a fact question needs to be submitted to a fact finder? But the question is not how much lighting there was. The question is, was there inadequate lighting? I don't know the answer to that. So is it a fact question? No. Okay. Because I created an allegation by filing a complaint, or the plaintiff did in this case, created an allegation by filing a complaint, and now what they have to do is present some evidence which says that there were no lights on the exterior of the building. There was no light in the parking lot, and that there were shades or that there were, you know. What if they had a witness that said there were two lights within, say, 25 feet of the place where the fall occurred? And that witness says, I couldn't see the curve, then that would create a question of fact. The plaintiff is the only witness, and she didn't testify to that. She testified. So the only thing that we're lacking to avoid the summary judgment is that they needed a witness to say, for example, how many lights were on or illuminated at the time of the fall, and I guess where they were positioned in relation to the place of the fall. That's not all they would need, but because, you know. Well, wouldn't that raise a fact question if she said she couldn't see well enough to discern the ramp? Sure. I mean, if they presented testimony that there were no lights in the front of the building, for instance, and that then the plaintiff says it was completely dark, I couldn't see my feet, that would create a question of fact. But that's not the facts that were before the court on summary judgment. It's the plaintiff's burden to come up with those facts, and they didn't. They could have hired an expert who went out there with a light meter and said that the standards for commercial lighting in a restaurant require that there to be .5 lumens at a sidewalk. That's not exactly what the standard is, but there is a standard. I can represent to your court there is a standard. And I went out there and measured it, and it didn't meet those standards. Or if there was a question of fact raised, I could hire an expert who goes out there and measures that and says that there are three times the amount of light that the standards say are required. And I could read a newspaper standing underneath that. What if the jury just viewed the scene? Well, then they would be substituting their view seven, eight years after the fact for what was there at the time of the plaintiff's fault. I believe all of you have said as trial judges, I've asked for juries to go to scenes, and I've never been allowed for that to happen because the circumstances are never the same at the time of the view as they were at the time of the fall, therefore irrelevant in presentation. Well, if Steak and Shake went out and changed the scene after the incident, that would be a relevant fact supporting the plaintiff's case, wouldn't it? It would. And if the plaintiff had done any discovery, they could have asked that question and presented that evidence in response to the motion for summary judgment. They didn't do it. But if you are arguing that the scene is different now than it was then, you're the one who's saying something has changed. Well, I'm not arguing that. That was your hypothetical question. All I'm saying is that if the plaintiff were to ask for a view of the scene, I would object on the basis that I just gave to Your Honor and the basis that every judge that I've ever asked for a review has given to me. Well, all these facts that you're talking about, that you're complaining the plaintiff has not asserted, they're all, like I said, written in stone. The slope is there. The curve is there. The lights are there, unless somebody's changed it. Yes. They're all out on West Turkson. They weren't in the trial court on 9th Street in Sangamon County, and they aren't before this court. That's the point, that the plaintiff has the object. As Judge Turner was saying to you, we don't decide questions of fact. Neither does the trial court. The trial court lets the jury do that. And why should we abandon that rule in this case? Because you're not abandoning that rule. What the trial court found and what I'm asking this court to affirm is a decision that there were no facts before the court on which it could make a decision. Because all there were were allegations and a plaintiff's deposition, which is all over the board, and the plaintiff is the only person who has anything relevant to say about this fault. Her son didn't see it. There are no witnesses. There was no evidence presented of any documentary. Well, I'm sorry. We have some photographs. And those photographs were taken by the plaintiff or plaintiff's attorney sometime after the fact, and they, I would submit, would be inadmissible at trial because even though you might say they fairly inaccurately depict the scene, and the plaintiff did, I can't imagine that they really do, that a jury would ever find that they fairly inaccurately depict the scene. They're black and white. They're grainy. They are not of evidentiary quality. As counsel for the plaintiff apologized to this court. If the plaintiff had been or if the defendant had known of this, we could have gone out there and taken pictures at the time of the fault. It notifies. We don't have any evidence, and the plaintiff didn't bring forward anything other than the bare allegations and her admissions that she could see, and that's the bottom line. She said she could see, and if you take that as a binding judicial admission, which I think you must, then whether or not there were stripes, and I submit to you that there were stripes there, and whether or not the slope was gentle, which counsel has admitted the slope was gentle, and whether or not there was lighting, I submit it was adequate. But my submission, you're going to tell me, Mr. Plaintiff, that's not evidence. That's all the plaintiff has, that the lighting was bad, that the slope was, that the ramp was unmarked, because they took pictures which don't show any markings. Now if I took a picture of this panel and I focus in on the plaintiff, all I'm going to get right now, all I can see is Justice Turner. Does that mean you're not here? No. And the plaintiff can only say that she didn't recall, not that there weren't any stripes, and that doesn't mean a burden of proof. That doesn't create a question of fact. The inability to recall does not create a positive that there were, a positive fact that there were no stripes. That's why Judge Sacco interceded on her judgment. I'm not going to be a dead horse, though. Okay, all right. Thank you. Rebuttal, please. I'd like to draw the court's attention to one other quote where my client says, well, I can't remember that something stopped my right foot and I tumbled, I was looking forward and down, and then I'm on the ground. That's in addition to everything else she's had to say. I know that this just doesn't seem to be favored by anyone, but there is this thing called circumstantial evidence, and the jury instructions say that circumstantial evidence is the same form of evidence as any other type of evidence that you are to receive, and you're to give it the same weight as any other evidence. And if circumstantially she's stepping off of that curb and her foot hits something and it stops her foot from moving forward and her ankle turns and she falls down, then the circumstantial evidence is just as great that she tripped on this thing, which she couldn't see, as is in the jury instructions, if someone's walking in from outside with an umbrella and you can presume it's raining outside. The fact of the matter is, given the circumstantial evidence and her testimony and reading the deposition in perimeteria, reading the whole deposition together, it's pretty clear that the lighting was bad. She concluded that the lighting was bad, but it's not just a conclusion. It's a statement of fact based upon her observations at the time, and there's nothing contradicting that. And what was the circumstantial evidence, the lighting was bad, and what else? No, the circumstantial evidence isn't that the lighting was bad. The testimony that she gave directly, based upon her observation at the time that she fell, was that it wasn't bright enough to see. The circumstantial evidence is that the place where she fell, the reason she fell, was because she tripped and fell on this slope, which, by the way, I said it sloped gently to the parking lot. I didn't say the side sloped gently to the parking lot. But I'd like to point the Court's attention to the case that I cited in my very brief brief, Fisher v. Sessions of the Third Order, and I'd like to go through it real quickly. The evidence in that case was plaintiff was not sure which lights were on and said that the ones on were dim. An employee of the hospital testified that the hospital lights were on and there was no way to dim those lights. Conflicting inferences can be drawn as to whether the plaintiff should have seen the barriers. Also, the plaintiff completed the testimony on what caused her fall. We believe the question of defendant's negligence and contributory negligence were questions of fact. This case is even stronger because there's no one who says anything that contradicts my findings. You were too quick for me. What was that case you were just reading from? It's in my brief. Okay. Just the name is all I need. It's Fisher v. Sessions of the Third Order. It's on page 2 of my reply brief. Okay. And it cites a couple other cases in there. But basically, that's a case where someone says, no, you didn't. She says, basically, it was too dim for me to see and that's why I didn't see the barrier and it was a question of fact. In this statement by my client that it wasn't bright enough to see and that she obviously didn't see what she stepped on regardless of whether she thought she could see when she was walking or she wouldn't have been surprised by the fact that her foot hit something  So I believe that there's sufficient facts to go to the jury in this case and I'm asking this court to reverse the ruling of the trial judge.  Thank you very much. Thanks to both of you. The case is submitted. The court is standing in the meeting.